IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


TOMMY DWAYNE HALL                                              PLAINTIFF


         v.                          Civil No. 04-4131


H. L. PHILLIPS, Sheriff, Miller County,
Arkansas; JEFF BLACK, Head Jailer,
Miller County Sheriff's Department; and
LT. HONZA, Miller County Sheriff's
Department                                                     DEFENDANTS


## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

         Tommy Dwayne Hall, a former inmate of the Miller County Detention Center, brings this

pro se civil rights action pursuant to 42 U.S.C. § 1983. Hall contends his constitutional rights

were violated in the following ways: (1) he was denied access to legal materials; (2) he was not

provided access to news sources; (3) by the jail failing to comply with jail standards and/or the

fire code; (4) by the conditions under which he was confined; (5) by defendants' failure to protect

him from attack by fellow inmates; and (6) by defendants' failure to provide him with adequate

medical care.

         On July 28, 2005, defendants filed a motion for summary judgment (Doc. 27). By order

entered on October 4, 2005 (Doc. 30), Hall was directed to complete, sign, and return an attached

questionnaire that would serve as his response to the summary judgment motion. On October

28, 2005, plaintiff's response to the court's questionnaire (Doc. 31) was filed. The summary

-1-

judgment motion is currently before the undersigned for issuance of this report and recommendation.

## I. BACKGROUND

In April of 2002, Hall was incarcerated at the Miller County Detention Center (MCDC). *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. He was awaiting trial on pending criminal charges. *Id.* at ¶ 2. He remained incarcerated for approximately three weeks. *Id.* at ¶ 3.

Hall alleges he was subjected to unconstitutional conditions of confinement including poor to non-existent ventilation, no facilities for exercise or recreation, antiquated plumbing that was often clogged, no sprinkler system, fire doors that were welded shut, no fire drills, no privacy while using the toilet, overcrowding, layers of filth, bug infestation, unsanitary food, no cleaning supplies, no supervision of the inmates preparing and delivering food, and no separation of detainees and convicted inmates. Hall also complained about the following: no facilities to privately consult with his attorney; no access to law books or other legal materials; no access to books, television, radio, or games; and no protection provided by cell searches, walk throughs, inmate counts, or video surveillance.[1]

Hall maintains the conditions were evident to the staff. *Resp.* at ¶ 4. He also indicates the poor conditions had been "recognized" by the media. *Id.* He contends recommendations by the state for upgrading the jail and threats of closure due to unbelievable jail conditions had done

---

[1] Hall did not submit grievances about any of these alleged unconstitutional conditions. *Resp.* at ¶ 4. Failure to exhaust administrative remedies was not raised by the defendants in their summary judgment motion. In *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005), the court stated "[t]his circuit considers the PLRA's exhaustion requirement to be an affirmative defense that the defendant has the burden to plead and to prove. Likewise, a lack of exhaustion does not deprive federal courts of subject matter jurisdiction." (citations omitted).

AO72A
(Rev. 8/82)

nothing to change the conditions. *Id.* Hall maintains everyday complaints were ignored and the same answer was always given: "This is jail." *Id.*

Hall named Sheriff Phillips as a defendant because he has control over the jail. *Resp.* at ¶ 5. Hall believes that if jail employees did not do their job, Sheriff Phillips is liable. *Id.* at ¶ 6.

Hall did not personally speak to, or communicate with, Sheriff Phillips regarding conditions at the jail, the assaults, or Hall's requests for medical treatment. *Resp.* at ¶ 7. Hall believes Sheriff Phillips, as the head of security, is supposed to know these things. *Id.* In Hall's opinion, this is especially true with respect to emergency grievances. *Id.* Hall also believes Sheriff Phillips is supposed to do checks to insure his employees are doing their jobs. *Id.* If he had checked, Hall maintains, Sheriff Phillips would have seen that his employees were not doing their jobs. *Id.*

Hall did not personally speak to, or communicate with Jeff Black regarding conditions at the jail, the assaults, or his requests for medical treatment. *Resp.* at ¶ 8. Hall believes Jeff Black is liable for any constitutional violations because he is the jail administrator. *Id.* at ¶ 9.

Hall had access to a day-room while confined to the MCDC from 8 a.m. to noon, from 1:00 p.m. to 5:00 p.m., and from 7:00 p.m. to 10:30 p.m. *Resp.* at ¶ 10. Hall had a bunk or a mattress to sleep on each night. *Id.* at ¶ 11. However, at first, his mattress was on the floor. *Id.*

Hall received a diet adequate to maintain his health. *Resp.* at ¶ 12. Hall was able to send and receive personal mail. *Id.* at ¶ 14. He stated he was without knowledge to state whether he could send and receive legal mail. *Id.* at ¶ 13. Hall had access to a telephone. *Resp.* at ¶ 19.

-3-

While he was detained, Hall states he did not have an attorney to represent him on his criminal charges. *Id.* at ¶ 15. However, when he was released, he obtained an attorney. *Id.*

Hall missed no deadlines for filing documents with a court. *Resp.* at ¶ 16. He was not barred from pursuing, or unable to pursue, claims because he did not have access to legal materials. *Id.* at ¶ 17. Hall states he wanted access to law books to research illegal search and seizure law to try and save money. *Id.* He also indicates he was going to file suit on incidents that occurred at the facility in April of 2002. *Id.*

Hall did not speak to, or communicate with, Sheriff Phillips about his request for access to legal materials. *Resp.* at ¶ 18(B). Instead, he spoke to detention center staff. *Id.*

Hall did not speak to, or communicate with, Jeff Black about his request for access to legal materials. *Resp.* at ¶ 18(C). However, he maintains Black should be held liable for the decisions made by others because his job as jail administrator was to make sure all materials, job standards, and jail conditions, were up to date. *Id.*

Hall did submit requests for access to legal materials to Lt. Honza. *Resp.* at ¶ 18(D). However, Hall states Honza never answered. *Id.*

Hall maintains he was assaulted twice while at the MCDC. He asserts the first assault occurred on the day he was booked in. *Resp.* at ¶ 20(A). Hall maintains he was threatened in front of Sgt. Janice, Mike Wade, and Kevin Hampton. Specifically, he states Quinton Morris and Nakia Smith, both trustees, stated that Hall was going to be beaten up no matter where he went in the jail. *Id.* at ¶ 20(B). Since the trustees could send letters up to the fifth floor, Hall

-4-

asserts the statement should have been taken seriously. *Id. See also* ¶ 31 ("They threatened and gave their intentions in front of the guard, while I was at book-in.").

When he was taken to the fifth floor, Hall maintains he was attacked by Shawn Nash. *Resp.* at ¶ 20(C). Hall knew Nash. *Id.* According to Hall, at some unspecified time before they were jailed, Nash had tried to rob him and had shot him. *Id.* Hall states he mentioned this when he was being booked in. *Id.*

Sheriff Phillips, Black, and Honza were not present when Hall was threatened or when he was attacked. *Resp.* at ¶ 21, ¶ 22, ¶ 29, ¶ 30. Hall maintains Kim Owens, Renita Brown, and Geneva Hall called the MCDC prior to the first assault and talked to Honza regarding the possibility that Hall would be assaulted. *Id.* at ¶ 28. According to Hall, each was told that it was under control. *Id.*

As a result of the attack, Hall states his eyes were blood shot and swollen up, his head was "busted," his lip was "busted," and he had bruises on his face and the back of his head. *Resp.* at ¶ 23. Following the attack, Hall was locked in a cell by himself. *Id.* He received no medical attention. *Id.* After the attack, Hall states he and Nash were not kept separated. *Id.* at ¶ 24.

Hall does not know the exact date of the second attack. *Resp.* at ¶ 32. However, he states he was attacked by Nash, Quinton Morris, and numerous other inmates on the fifth floor (general population side). *Id.* Hall indicates the second assault occurred when an officer was placing Morris back in his assigned area. *Id.* at ¶ 24. Hall maintains he was beaten with brooms, sticks, and crates. *Id.* He was kicked in the head, his head was "busted," his lips "busted," his eyes

AO72A
(Rev. 8/82)

were blood shot and swollen, and he had bruises on his face and back. *Id.* He also indicates he had torn gums, couldn't see out of the one eye and had blurry vision in the other. *Id.* at ¶ 36. He states he couldn't eat and could barely move. *Id.* He thought his ribs were broken. *Id.* at ¶ 37(A). Hall indicates there are photographs and he is trying to recover them. *Id.* at ¶ 24.

Prior to the attack, Hall indicates he gave Officer Ferguson a note. *Resp.* at ¶ 33. Hall states he also called his family. *Resp.* at ¶ 33. The note indicated that Hall believed he was going to be jumped on and that an inmate, who belonged on the max side, was over on the population side of the fifth floor. *Id.* Hall stated he did not get along with this inmate. *Id.* Hall indicates the max side of fifth floor is a lock-down pod and the inmates cannot normally go from that side to the general population side of fifth floor. *Id.* Hall states he also verbally conveyed his concerns. *Id.*

Because it was taking a long time to get a response to his note, Hall indicates he called Renita Brown and told her he had given the police a letter but they did nothing in response. *Resp.* at ¶ 33. According to Hall, Brown called the jail and talked to Honza who indicated she was sending someone up to get Hall. *Id.*

Hall states he was then attacked so he called Brown again and told her what happened. *Resp.* at ¶ 33. According to Hall, Brown again called and talked to Honza who sent a guard to get him. *Id.* Hall indicates he told Honza he had sent a note with Ferguson over twenty minutes before. *Id.* Ferguson then pulled the note out of his pocket and gave it to Honza and walked off. *Id.* At this point, Hall states, Honza and Sgt. Nichols looked over his bruises. *Id.*

-6-

Hall was placed on lock-down following this assault. *Resp.* at ¶ 35. Hall indicates Honza made the decision to put him on lock-down. *Id.* Hall states he received no medical attention and was merely left to heal. *Id.* Two or three days later, Hall indicates he was allowed to shower. *Id.*

Hall states he was at home when he healed. *Resp.* at ¶ 36. He indicates his family sold his belongings to get him out of jail. *Id.*

Hall was asked how the conditions of his confinement while he was on lock-down were different. *Resp.* at ¶ 35. He replied the room was filthy, there were gnats and bugs, and there was no running water in the sink. *Id.*

Hall felt he was being punished. *Resp.* at ¶ 35. He states his family did not hear from him for a few days and his emergency contact wasn't contacted. *Id.*

Hall does not know who evaluated requests for medical care at the MCDC. *Resp.* at ¶ 37(C). He received no response to his requests for medical care. *Id.* at ¶ 37(D). He received no medical treatment while at the MCDC. *Id.* at ¶ 37(E).

As a result of not receiving medical attention following the second attack, Hall states he suffers blurriness of vision. *Resp.* at ¶ 37(G). He also has some scars. *Id.*

None of the defendants personally decided whether he should receive medical treatment. *Resp.* at ¶ 37(F). However, he states Honza saw he was in need of medical attention and a request should not have been necessary. *Id.* Hall states he knows he is not the only inmate assaulted who did not receive medical attention. *Id.* As a result, it is his opinion that Sheriff

-7-

Phillips' failure to make sure Honza and Black did their jobs led to Hall's safety and medical attention being neglected. *Id.*

Hall indicates he does not know if prisoners were allowed to bring books into the MCDC. *Resp.* at ¶ 25. He indicates prisoners were allowed to have newspapers or magazines brought in. *Id.* at ¶ 26. Hall indicates there was no radio or television on the side of the fifth floor he was assigned to but he does not know if other areas of the jail had access to a radio or television. *Id.* at ¶ 27.

Hall asserts there was inadequate room to exercise in either his cell or in the day-room. *Resp.* at ¶ 38. He maintains there were simply too many people. *Id.* at ¶ 38 & ¶ 10. In the day-room, he states the room was small and the table in the middle of the room took up much of the space. *Id.* at ¶ 10. He also indicates a number of inmates had to stand around because the table only held about six people. *Id.* at ¶ 10. With respect to the cell, he states prisoners could barely make it to the toilet without stepping on someone or on a mat on the floor. *Id.* at ¶ 38.

Hall was provided with basic hygiene items. *Resp.* at ¶ 45. While he did not receive these at first, Hall indicates he came across the items gradually either from an officer or from inmates who had extras. *Id.*

Hall was allowed to shower every day. *Resp.* at ¶ 39. Most of the time, he had access to basic hygiene items such as soap and water in between showers. *Id.* at ¶ 40. However, there were times when it was hard to get soap because they were out or it was locked up. *Id.* When he was first booked in, he didn't have access to soap for two or three days. *Id.* After the second assault, he didn't have access to soap for two or three days. *Id.*

AO72A
(Rev. 8/82)

Hall indicates he had access to a toilet and running water to perform basic hygiene. *Resp. at ¶ 41.* There were times, however, the toilet or shower were clogged. *Id.* Hall indicates you could also take a shower without soap. *Id.*

Hall received three meals a day. *Resp. at ¶ 42.* Hall was asked if he suffered any physical injury as a result of the general cleanliness of the MCDC or as a result of overcrowding. *Resp. at ¶ 44 & ¶ 46.* He responded that he had been bitten by bugs and once by a spider. *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

-9-

# III. DISCUSSION

Defendants have now moved for summary judgment. First, defendants argue that the facts set forth in the light most favorable to the plaintiff fail to establish that they violated the plaintiff's constitutional rights. Next, defendants argue there is no evidence of any custom or policy of Miller County that was a moving force behind any alleged violation of plaintiff's constitutional rights.

### Access to Legal Materials or the Courts

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(*citing*, *Lewis v. Casey*, 518 U.S. 343, ----, 116 S. Ct. 2174, 2179, 135 L. Ed. 2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494-95, 52 L. Ed. 2d 72 (1977)). In *Myers,* the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail. Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts. To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims. Alleging theoretical inadequacies is insufficient. Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all.

*Myers*, 101 F.3d at 544 (citations omitted). *Cf. Kane v. Garcia Espitia*, ___ U.S. ___, 126 S. Ct. 407, 408 (Oct. 31, 2005)(per curiam)(Habeas corpus case. No clearly established federal law establishing a *pro se* criminal defendant's right of access to a law library. *"Faretta [v.*

-10-

*California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)] says nothing about any specific legal aid that the State owes a *pro se* criminal defendant.").

In *Cody v. Weber*, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) and *Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), "determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" *Cody*, 256 F. 3d at 767-68 (*quoting Lewis*, 518 U.S. at 354-55).

Although "[p]ro se defendants have a right of access to adequate law libraries or adequate assistance from persons trained in the law," *United States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991)(quotations omitted), the right is not an abstract one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. *See also Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003)("Actual injury or prejudice must be proven to prevail on an access-to-courts claim."). In this case, Hall's claim stemming from his lack of access to a law library or legal materiels fails because he has suffered no actual injury.

Hall did not miss any deadlines for filing any documents or claims with the court. *Resp.* at ¶ 16 & ¶ 17. Hall's allegations are insufficient as a matter of law.

Hall also asserts that he was not provided with an area, or with an opportunity, to consult with his attorney in private. *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052 (8th Cir. 1989)("[d]etainees' right to counsel and due process can . . . be compromised by a lack of privacy in consultations with counsel."). However, Hall was not represented by an attorney

-11-

during the three weeks or so he was incarcerated at the MCDC and no attorney attempted to visit him there.  *Resp.* at ¶ 15 & ¶ 18(A).  *See also Addendum* (Doc. 7) at ¶ 28(A).

### *Access to Books, Television, and Newspapers*

It has been held that "[t]here is no basis for total restrictions on prisoners' access to the news in view of their clear First Amendment rights." *United States ex rel. Manicone v. Corso*, 365 F. Supp. 576, 577 (E.D.N.Y. 1973).  *But see Manley v. Fordice*, 945 F. Supp. 132, 137 (S.D. Miss. 1996)("No court has recognized a federal constitutional right to the usage of radio and television by inmates").  Furthermore, a number of courts have held that prisoners have a right to receive and read newspapers.  *See e.g., Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987)(absent restrictions based on legitimate goals of confinement, prison inmates retain a First Amendment right to receive and read newspapers); *Mann v. Smith*, 796 F.2d 79, 82-83 (5th Cir. 1986)(county jail's policy of banning newspapers and magazines violated a pretrial detainee's First Amendment rights where the state failed to show the ban served a legitimate government objective); *Wilkinson v. Skinner*, 462 F.2d 670, 673 n. 5 (2nd Cir. 1972)("refusal to deliver a newspaper would ordinarily be interference with appellant's first amendment rights"); *Rowland v. Jones*, 452 F.2d 1005 (8th Cir. 1971)(prison authorities' denial of access to newspaper "Muhammad Speaks" constituted prior restraint in violation of First Amendment); *Spellman v. Hopper*, 95 F. Supp. 2d 1267 (M.D. Ala. 1999)(absolute prohibition on subscription magazines and newspapers applied to administrative segregation inmates in Alabama is not reasonably related to legitimate penological goals).

An absolute denial of access to newspapers violates an inmates' First Amendment rights. *Parnell v. Waldrep*, 511 F. Supp. 764, 767-68 (W.D.N.C. 1981) (refusal to allow jail inmates to

-12-

receive newspapers is unconstitutional); *Hutchings v. Corum*, 501 F. Supp. 1276, 1299 (W.D. Mo. 1980)(absolute denial of access to newspapers violates inmates' First Amendment guarantees); *Mitchell v. Untreiner*, 421 F. Supp. 886, 895 (N.D. Fla. 1976)(failure to permit inmates to read daily newspaper denied First Amendment freedom of speech, association, and right to be informed citizens in a democratic society); *Payne*, 325 F. Supp. at 1993 (that right to receive newspapers and magazines is part of First Amendment is beyond question).

Here Hall makes no argument that he was not allowed to have books, newspapers, or magazines in his cell. *Resp.* at ¶ 25, ¶ 26. He only contends the facility did not provide these items. Additionally, with the exception of the three days he was put on lock-down following the second assault, he had access to a television before the television was destroyed. *Addendum* (Doc. 7) at ¶ 15(B) & ¶ 15(C).

We believe defendants are entitled to summary judgment on this claim. Although the MCDC may not have furnished Hall with books, newspapers, or magazines, or provided him with access to a radio or television each day, Hall makes no argument the facility rules prohibited him from receiving books, newspapers, and magazines or that he was for some other reason unable to, or prevented from, obtaining these materials.

### Conditions of Confinement

As Hall was a pre-trial detainee, he was "outside the protections of the Eighth Amendment proscription against cruel and unusual punishment, which applies only to convicted prisoners." *Hott v. Hennepin County, Minnesota*, 260 F.3d 901, 905 (8th Cir. 2001). Instead, pre-trial detainees are protected by the Fourteenth Amendment guarantees. *Id.* "The Fourteenth Amendment guarantees pre-trial detainees at least as many protections as does the Eighth

-13-

Amendment, however, and extends to them as well protection from deprivations that are intended to punish." *Id.*

"Conditions of pretrial confinement are impermissible if they constitute punishment as determined by the due process standards of the Fifth and Fourteenth Amendments." *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996)(*citing, Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). *See also Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(*citing Davis v. Hall,* 992 F.2d 151, 152 (8th Cir. 1993) and *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). "[A] pretrial detainee faces a lighter burden to show a constitutional violation than [that required of a convicted person] under the Eighth Amendment." *Smith v. Copeland*, 87 F.3d 265, 268 n. 4 (8th Cir. 1996)(*citing Bell*, 441 U.S. at 537 n. 16 (due process requires that a pretrial detainee not be punished; the Eighth Amendment requires that the punishment imposed not be cruel and unusual)).

In elaborating on the appropriate standard to be applied to conditions of confinement claims brought by pretrial detainees, the Eighth Circuit in *Smith* said:

> The proper inquiry is whether those conditions amount to punishment of the detainee, for, under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt. However, not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." The Government has legitimate interests that stem from its need to manage the facility in which the individual is detained. Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned.

*Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996)(citations omitted).

In evaluating conditions of confinement claims, the court is to "look to a number of factors, including the size of the detainee's living space, the length of the confinement, the

-14-

amount of time spent in the confined area each day, and the opportunity for exercise." *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996). The conditions are to be viewed in the totality of the circumstances. *Id.*

### (a). General Complaints & Overcrowding

Hall contends he was subjected to the following conditions: poor ventilation; antiquated plumbing that was often clogged; no privacy while using the toilet; layers of filth; bug infestation; no cleaning supplies; and no separation of detainees and convicted inmates. Hall also contends the facility was overcrowded.

"[O]vercrowding alone is insufficient to create a due process violation." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 854 (8th Cir. 1995). *See Patchette v. Nix*, 952 F.2d 158, 162 (8th Cir. 1991)(plaintiff has not alleged "overcrowding led to deprivations of essential food, medical care, or sanitation, nor increased violence among inmates or other conditions intolerable for prison confinement")(*citing Cody v. Hillard*, 830 F.2d 912, 914 (8th Cir. 1987)). *See also Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993)(using an Eighth Amendment standard to evaluate the claims of a pretrial detainee even though his rights arose under the due process clause of the Fourteenth Amendment rather that under the Eighth Amendment); *accord Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994).

Here, Hall has not alleged that the "overcrowding led to deprivations of essential food, medical care, or sanitation." *Patchette v. Nix*, 952 F.2d 158, 162 (8th Cir. 1991)(*citing Cody v. Hillard*, 830 F.2d 912, 914 (8th Cir. 1987)). *See also Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993)(using an Eighth Amendment standard to evaluate the claims of a pretrial detainee even though his rights arose under the due process clause of the Fourteenth Amendment rather

-15-

that under the Eighth Amendment); *accord Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994). Hall had a bunk or mattress to sleep on each night. *Resp.* at ¶ 11. He received a diet adequate to maintain his health. *Id.* With the exception of the three days he was on lock-down, he was able to shower everyday and he had access to a toilet and running water to perform basic hygiene between showers. *Resp.* at ¶ 39, ¶ 35, & ¶ 41. While Hall was assaulted twice, there is no indication the assaults were the result of overcrowding rather than ill feelings Nash had for Hall. *Resp.* at ¶ 20(C), ¶ 24, & ¶ 31.

Here, Hall was confined at the MCDC for only three weeks. *See Resp.* at ¶ . During this time, his basic human needs for food, clothing, and shelter were met. A *de minimis* level of imposition does not rise to the level of a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 539 n. 21, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). *See also Wilson v. Seiter*, 501 U.S. 294, 305-05, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.").

### *(b). Exercise*

A constitutional violation exists if prison officials are deliberately indifferent to an inmate's exercise needs. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.* Among factors the court should consider in reviewing such a claim are: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement. *Id.*

-16-

Here, Hall maintains there was inadequate space to allow for exercise in his cell or in the day-room. It has been recognized that "short-term denials of exercise may be inevitable in the prison context." *See Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001). *See* also *Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986)(fifteen days of no out-of-cell exercise not cruel and unusual punishment); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(45 minute out-of-cell recreation time per week did not violate the Eighth Amendment rights of inmate in protective custody). Hall does not allege he suffered any physical injury as a result of the lack of exercise. We believe defendants are entitled to judgment in their favor on this claim.

### (c). Diet

Both the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment's prohibition against cruel and unusual punishment require prisoners to be provided with meals nutritionally adequate to maintain health. *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980)(prisoners are guaranteed a reasonably adequate diet). Merely because the food is not prepared to an inmate's taste or the fact that an inmate would prefer other foods does not implicate the Constitution. Rather, the Constitution is only violated if the food provided is inadequate to maintain good health. *See e.g., Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990)(inmates do not have a right to be served a particular type of food). *See also Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)(the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities).

Here, Hall contends the food was unsanitary and there was no supervision of the inmates preparing and delivering food. However, he concedes he was given a diet adequate to maintain

AO72A
(Rev. 8/82)

his health.  *Resp.* at ¶ 12.  Hall suffered no physical injury as a result of the diet he received and his health was not endangered because of the manner in which the food was prepared or served. Thus, no claim of constitutional dimension is stated.

### (d).  *Violation of Jail Standards*

A violation of jail standards does not equate with a violation of the Constitution.  As the Eighth Circuit said in *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991), "[j]ail standards, although helpful and relevant in some cases, do not represent minimum constitutional standards."

### (e).  *Fire Safety*

Hall maintains the facility had no sprinkler system, the fire doors were welded shut, and that no fire drills were conducted.  He alleges the lack of fire safety violated his rights.

Cases have held that fire safety deficiencies can be so serious that they become constitutional violations.  *See Hadix v. Johnson*, 367 F.3d 513, 528-530 (6th Cir. 2004)(discussing cases).  The court in *Hadix* noted that a review of the "cases dealing with fire safety in the constitutional context illustrates a continuum of various violations of fire safety, generally, and fire safety codes, specifically."  *Id.* at 529.  The cases where constitutional deficiencies have been found to exist were cases where the risk of fire was found to be so serious that it violated contemporary standards of decency.  The facts present in those cases included, among other things, the following:  overcrowded dormitories carrying a heavy combustible load; walls that could not contain a fire within any room; inoperable cell locking devices, manual alarm systems, smoke dampers, and heat detectors; the facility was replete with fire hazards; evacuation procedures were nonexistent; and evidence of multiple fire related injuries and/or fatalities.

-18-

There were no fires while Hall was detained at the facility. He was never physically

harmed and Hall advances no specific factors suggesting that there was any serious risk of harm

to him or other inmates. We therefore conclude defendants are entitled to summary judgment

on this claim.

### Failure to Protect

Due process 'protects pretrial detainees both from deliberate exposure to violence and

from failure to protect when prison officials learn of a strong likelihood that a prisoner will be

assaulted.'" *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988). Similarly, the

Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners

from violence at the hands of other prisoners. *Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir.

1998). In addressing failure to protect claims brought by pretrial detainees, the Eighth Circuit

has noted that the pretrial detainees are entitled to at least as much protection as a convicted

inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees

and convicted prisoners. *Perkins*, 161 F.3d at 1129- 1130. *See also Thomas v. Booker*, 784

F.2d 299 (8th Cir. 1986)(analyzing a pretrial detainee's failure to protect claim under the same

Eighth Amendment analysis used for similar claims brought by prisoners.).

In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:

An Eighth Amendment claim for failure to protect is comprised of two elements.
First, an "inmate must show that [he] is incarcerated under conditions posing a
substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).
Second, the inmate must establish that the defendant prison official recklessly
disregarded that risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998).
"For the purposes of failure to protect claims, it does not matter ... whether a
prisoner faces an excessive risk of attack for reasons personal to [him] or because
all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,*
260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is

-19-

whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendants'] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer,* 511 U.S. at 837.

*Riley,* 282 F.3d at 595. *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002)

Thus, to prevail, Hall must show: (1) that his incarceration with Nash posed a substantial risk of serious harm, and (2) each of the defendants knew of and disregarded an excessive risk to Hall's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

To establish the second component, Hall must show that each defendant acted, or failed to act, with deliberate indifference to Hall's safety. *Id.* Negligence is not sufficient. *Id.* Even if the conduct was unreasonable, this is not enough because "reasonableness is a negligence standard." *Id.* at 742 (internal quotation marks and citation omitted). Further, the United States Court of Appeals for the Eighth Circuit has noted that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Id.* at 740-741 (internal quotation marks and citation omitted).

In *Perkins v. Grimes*, 161 F.3d 1127 (8th Cir. 1998), the district court "agreed that defendants were on notice that Wilson was a disruptive inmate," but found defendants "had no notice that Wilson posed a threat of serious injury to Perkins because Perkins did not effectively alert them that he faced such a threat." *Id.* at 1130. Further, the district court found that "the defendants periodic cell checks yielded no information that would have put them on such

-20-

notice." *Id.* The Eighth Circuit found no clear error. *Id.* It noted that "[a]lthough the testimony indicated that Wilson was an easily provoked detainee, the evidence also shows that Perkins and Wilson had previously been housed together without incident and that Perkins' jailers neither knew, or had reason to know, that Wilson was a violent sexual aggressor, either on this or on a previous occasion." *Id.*

In this case, we believe genuine issues of fact preclude summary judgment in defendants' favor. With respect to the first attack on Hall, he indicates he told the officers when he was being booked in that Nash had previously attempted to rob him and had shot him. Hall also indicates trustees present during the booking process made threats against Hall in the hearing of detention center personnel. If this were the only attack involved, the defendant might be entitled to summary judgment in their favor on this claim. However, it is not. Instead, this was merely the first of two attacks.

According to Hall, following the first attack, he and Nash were not kept separate. Prior to the second attack occurring, Hall indicates he both verbally and in writing stated his belief that he was about to be assaulted again. Hall also called family and/or friends who called the jail on his behalf and talked to Honza about the situation.

Although Hall estimates that only twenty minutes elapsed between the time he voiced his belief that he was going to be attacked and the actual attack, the court believes the first assault plus Hall's report regarding his prior involvement with Nash suggests defendants should have anticipated, or known, that Hall was in danger of being attacked by Nash. Given the totality of the circumstances, we believe there are genuine issues of material fact as to whether Hall was

-21-

incarcerated under conditions posing a substantial risk of serious harm and as to whether defendants recklessly disregarded the risk.

Although Honza is the only named defendant who Hall indicates was personally involved in evaluating the risk he faced, we believe Hall has sufficiently alleged a basis on which Black and Sheriff Phillips can be held liable. Hall contends there were a number of inmate attacks at the facility and no action was taken to provide increased security for inmates. He also contends that some action should have been taken in response to the statements he made regarding Nash at booking. At a minimum, he suggests the jail policy and practice should have been for him to be kept separated from Nash.

### Denial of Adequate Medical Care

As Hall was a pretrial detainee, his denial of medical care claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004). "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983). In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g.,*

-22-

*Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)(analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by

-23-

medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Here, Hall contends he sought medical treatment after both assaults. He maintains he received no treatment, was not medically evaluated, and received no response to his requests for treatment. He maintains he received multiple injuries that did not heal until after he was released from incarceration.

Defendants have provided the court with no information on how requests for medical treatment are handled at the facility. There is nothing to suggest Hall's requests were reviewed by anyone or whether he was observed and his injuries following the attacks deemed insufficiently serious to warrant medical care.

-24-

Hall indicates Honza looked at his injuries following the second attack but we are provided with no information on whether she evaluated his need for medical care. As we are given no information on the facility's policies regarding medical care or how requests for medical care are handled, we cannot say defendants are entitled to judgment as a matter of law on this claim.

## IV. CONCLUSION

I therefore recommend that defendants' motion for summary judgment be granted in part and denied in part. Specifically, I recommend that the summary judgment motion be granted with respect to the following claims: (1) his claim he was denied access to legal materials and/or the courts; (2) his claim that he was denied access to books, magazines, newspapers or other access to the news; (3) his claim that the facility failed to comply with jail standards, the fire code, or presented a fire risk; and (4) his claim that he was subjected to unconstitutional conditions of confinement. I recommend the motion for summary judgment be denied on the failure to protect claim and the denial of medical care claim.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of November 2005.

/s/ Bobby E. Shepherd
UNITED STATES MAGISTRATE JUDGE

-25-